**FIRST NATIONAL FIDELITY CORP.**

v.

**Ruth PERRY, Appellant,**

**Robert M. Wood, Trustee.**

No. 90–5928.

United States Court of Appeals,
Third Circuit.

Argued April 16, 1991.

Decided Sept. 11, 1991.

Rehearing Denied Oct. 8, 1991.

David Paul Daniels, P.A. (argued), Jeannette M. Amodeo, Camden, N.J., for appellant.

William V. Eisenberg (argued), Janet L. Gold, Eisenberg & Gold, P.C., Haddonfield, N.J., for appellee.

Peter J. Broege, Wood, Broege & Fischer, Manasquan, N.J., for Trustee.

Frank Max Salinger, Robert E. McKew, American Financial Ass'n, Washington, D.C., for American Financial Services Ass'n.

Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for Consumers Educ. and Protective Ass'n and Jeffrey Helveston.

Jack K. Miller, Miller and Miller, Philadelphia, Pa., for Helen Baker.

Neil J. Fogarty (argued), Hudson County Legal Services Corp., Timothy K. Madden, Director, Jersey City, N.J., Professor Philip Shuchman, Rutgers Law School, Newark, N.J., for Hudson County Legal Services Corp.

E. Robert Levy, Edward A. Bertele, Levy & Lybeck, P.C., Union, N.J., for Mortgage Council of New Jersey.

Before STAPLETON, GREENBERG and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Recognizing that "state laws are ... suspended only to the extent of actual conflict with the system provided by the Bankruptcy [Code]," *Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918), this court has held that Chapter 13 does not authorize a debtor to reinstate his New Jersey home mortgage after a foreclosure sale and before the time for redemption has expired. *In re Roach*, 824 F.2d 1370, 1373 (3d Cir.1987). Our analysis in *Roach* led to the conclusion that such a mortgage cannot be reinstated at any time after a foreclosure judgment has been entered. *Id.* at 1373. Today we hold that after a foreclosure judgment has been entered on a New Jersey home mortgage, Chapter 13 does not authorize a plan calling for payment of that judgment over the three to five years of the plan. To permit confirmation of such a plan would be to modify the rights of a claim secured only by the debtor's principal residence. Although the Bankruptcy Code ("Code") generally allows debtors to pay claims over the life of a Chapter 13 plan, it specifically excepts home mortgages from the general authorization to modify claims. 11 U.S.C.

§ 1322(b)(2). Accordingly, federal bankruptcy law does not preempt a New Jersey creditor's state law right to immediate payment of the foreclosure judgment entered as a result of a default on a home mortgage.

### I.

The facts are not in dispute.[1] First National Fidelity Corporation ("First National") held a mortgage in the face amount of $11,844.22 on the residence of Ruth Perry that called for 20.99% interest. After Perry defaulted, First National obtained a foreclosure judgment. Before the foreclosure sale, however, Perry filed a Chapter 13 petition and a plan that proposed paying First National $13,562, plus the judgment interest rate of ten percent for a total of $17,292, over five years. First National moved to vacate the automatic stay, arguing, *inter alia*, that the proposed plan was not authorized by Chapter 13 and, alternatively, that the ten percent interest provided under the plan was inadequate because the original mortgage had provided interest of over twenty percent. The bankruptcy court denied that motion and confirmed Perry's plan. A formal order was entered March 28, 1990. On appeal, the district court found that § 1322(b)(2) barred payment of the foreclosure judgment over the life of the plan, reversed the bankruptcy court's order, and denied confirmation of Perry's plan. Perry has appealed from that judgment.

The district court has jurisdiction over an appeal from a final order of the bankruptcy court pursuant to 28 U.S.C. § 158(a), and this court has jurisdiction over a final order of the district court pursuant to 28 U.S.C. § 158(d). "[W]e exercise plenary review of the legal standard applied by the district and bankruptcy courts", *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir.1986), which is the sole issue in this appeal.

---

**1.** Although Perry attempts to challenge whether First National's claim was "secured only by a security interest" in her house, the district court properly refused to consider that issue because

### II.

Section 1322(b) of the Bankruptcy Code provides in relevant part that a Chapter 13 plan may,

> (2) modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims ...

> \* \* \* \* \* \*

> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(emphasis added). Thus, home mortgage lenders are to be treated differently from other claimants. Although a Chapter 13 plan may provide for "cure" of a default, it may not "modify" the rights of a home mortgage lender.

*In re Roach, supra*, presented the issue of "whether 11 U.S.C. § 1322(b) evidences a congressional intent to authorize cure of a default on a home mortgage after there has been a contractual acceleration of the full mortgage debt, a foreclosure judgment, and a foreclosure sale, so long as the state law redemption period has not expired." 824 F.2d at 1371–72. We stressed at the outset that we were required to approach the task of ascertaining congressional intent with two things in mind:

> we must approach that task with the realization that the Bankruptcy Code was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests.

824 F.2d at 1374.

Examining the text of § 1322 and its legislative history from this perspective, we concluded that § 1322(b)(5) preempts state

---

it found that she had not raised it before the bankruptcy court. Slip op. at 6 n. 1, 1990 WL 159975. Therefore, we also will decline to consider that issue.

law to the extent of authorizing debtors to "cure" mortgage defaults after acceleration and before foreclosure, by paying the arrearage in a Chapter 13 plan and restoring the original mortgage relationship. At the same time, we noted that upon entry of a foreclosure judgment, New Jersey establishes a new relationship between the mortgagor and mortgagee which includes a right on the part of lender to immediate payment of the debt from the proceeds of a sale of the property. We concluded that in the context of this new relationship, § 1322(b)(5)'s authorization of a cure and return to the pre-default *status quo* was inapposite. Since the change which the Roaches' plan sought to make in the rights of their home mortgage lender was not a "cure" within the meaning of § 1322(b)(5) and since § 1322(b)(2) prohibited any material alteration in the rights of such a lender other than those effected in a "cure," we found no federal authorization for preempting the state rights created upon the entry of the foreclosure judgment. Accordingly, we affirmed the district court's refusal to confirm the Roaches' plan.[2]

Applying *Roach* to plans such as Perry's, which propose paying a foreclosure judgment on a home mortgage in a Chapter 13 plan, New Jersey bankruptcy and district courts have reached three different results. *In re Coleman*, 82 B.R. 15, 18 (Bankr. D.N.J.1988), found that § 1322(b)(2) does not apply to such plans because a foreclosure judgment is not a lien "created by an agreement", and therefore is not a security interest. *In re Brunson*, 87 B.R. 304, 309 (Bankr.D.N.J.1988), found that § 1322(b)(2) does not prohibit such plans because Congress only intended to prohibit "alteration[s] of the terms of the [home lender's] security interest", particularly reduction of the secured claim to the value of the collateral pursuant to § 506(a). Finally, *In re McKeon*, 86 B.R. 350 (Bankr. D.N.J.1988), found that § 1322(b)(2) did apply and that paying a foreclosure judgment over the life of a Chapter 13 plan "affect[s]

an unauthorized modification of the respective creditors' rights created by the final state court foreclosure judgment." *Id.* at 385. For the reasons that follow, we agree with that interpretation.

### III.

"The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079. To achieve this purpose, Chapter 13 generally allows modification of creditors' claims to allow debtors the necessary time to repay their debts. This power of modification was extended in Chapter 13 to claims secured by real estate that had been excluded from plans under the old Chapter XIII. But testimony by representatives of secured creditors resulted in § 1322(b)(2)'s exception of home mortgages from that general power of modification. Congress apparently accepted predictions by representatives of secured creditors' interests that

> savings and loans will continue to make loans to individual homeowners, but they will tend to be ... extraordinarily conservative and more conservative than they are now in the flow of credit. [Home mortgage lenders] will have to recognize that there is an additional business risk presented [if a bill is passed] providing for the possibility of modification of the rights of the secured creditor in the residential mortgage area.

*Bankruptcy Reform Act of 1978: Hearings on S. 2266 and H.R. 8200 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 95th Cong., 1st Sess. 707, 715 (1977) (statement of Robert E. O'Malley). As the Court of Appeals for the Sixth Circuit has observed,

> Congress had to face the reality that ... [e]very protection Congress might grant

---

**2.** We further held in *Roach* that the district court had not erred in lifting the automatic stay of § 362(a) after the Roaches failed to exercise

timely their right of redemption. 824 F.2d at 1372 n. 1.

a homeowner at the expense of the holders of security interests on these homes would decrease the attractiveness of home mortgages as investment opportunities [and the availability of home mortgage financing].

*In re Glenn,* 760 F.2d 1428, 1434 (6th Cir. 1985); *see also Id.* at 1433 n. 1; *Grubbs v. Houston First Amer. Sav. Ass'n,* 730 F.2d 236, 245–46 (5th Cir.1984) (en banc).

Thus, the prohibition found in § 1322(b)(2) against modification of the rights of home mortgage lenders was intended to make home mortgage money on affordable terms more accessible to homeowners by assuring lenders that their expectations would not be frustrated. The only exception to this assurance is § 1322(b)(5) which allows a Chapter 13 debtor to "cure" his mortgage after a default.

Perry misses the point when she argues—for example citing *United Savings Assoc. v. Timbers of Inwood Forest Assoc.,* 481 U.S. 1068, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987)—that the Code often modifies creditors' state law right to immediate payment. By specifically excluding the claims of home lenders in § 1322(b)(2), Congress established that those claims are not subject to a Chapter 13 plan's general power to modify. As another court of appeals noted

> [§ 1322(b)(2)'s] deliberate alteration of the statute's general protection of the debtor is a more precise barometer of congressional intent in this particular context [than the general purpose of rehabilitating the debtor].

*In re Seidel,* 752 F.2d 1382, 1385 (9th Cir. 1985);[3] *see also Glenn,* 760 F.2d at 1434. Therefore, the question is not whether home lenders should be treated differently from other creditors, but rather the extent of the enhanced protection Congress intended them to have. More specifically, the issues for resolution here, as in *Roach,* are whether the debtor's plan would work a

"modification" of the lender's rights within the meaning of § 1322(b)(2) and whether it is an authorized "cure" under the provisions of § 1322(b)(5).

## IV.

Because § 1322(b)(2)'s exception applies only to claims secured by a "security interest" in the debtor's house, we first must determine whether a foreclosure judgment lien is a "security interest." The Code defines a security interest as a "lien created by an agreement", 11 U.S.C. § 101(51). If that definition is taken to mean that a security interest must be a purely consensual lien, then a foreclosure judgment does not qualify. *Coleman,* 82 B.R. at 18. But if that definition is taken to require only that a security interest be "created" as the result of an agreement, then it does:

> Even though the contractual terms between the parties in this case have merged into the entry of judgment of foreclosure, the security interest or lien against the property continues to be the *product* of the consensual arrangement between debtor and lender.

*Brunson,* 87 B.R. at 311 (emphasis added); *see also First Fin. Sav. & Loan Ass'n v. Winkler,* 29 B.R. 771, 776 (N.D.Ill.1983) (The combination of "(1) a right to receive payment and (2) a right to look to the real estate if payment is not made ... continues to fit the classic notion of a 'security interest' in real estate."). The statutory definition is susceptible to either interpretation.

But once we consider the purpose of § 1322(b)(2) and the impact of the two interpretations, the appropriate conclusion is apparent: following the entry of a foreclosure judgment, the lender continues to have a "security interest" within the meaning of § 1322(b). Home mortgage lenders advance credit in reliance on their ability to recover their investments through mortgage foreclosure when a debtor defaults and foreclosure is thus an inherent part of

---

**3.** Nor are the general policies of the bankruptcy code concerned purely with the debtor.

> This is not primarily a debtor's bill, however. The bill codifies creditors' rights ... It defines the protections to which a secured creditor is

entitled and the means through which the court may grant that protection.

H.Rep. No. 595, 95th Cong., 2d Sess. at 4–5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 5966.

the mortgagor-mortgagee relationship. We are confident that Congress must have had this fact in mind when it sought to provide special assurance to home mortgage lenders that their expectations would not be frustrated. If modification of the lender's rights were permissible after it secured a foreclosure judgment, the assurance afforded by § 1322(b)(2) would be rendered largely illusory. Accordingly, we think it highly unlikely that Congress intended the protection afforded home mortgage lenders by § 1322(b)(2) to terminate at the point of foreclosure. Thus, we hold that a New Jersey home mortgage lender retains a security interest for the purposes of § 1322(b)(2) following the entry of a foreclosure judgment.

## V.

Having determined that a foreclosure judgment lien is a security interest, we must decide the second issue of whether payment of such a judgment over a Chapter 13 plan constitutes a modification. This court has interpreted New Jersey law to be that

> a final state court foreclosure judgment in New Jersey establishes rights in the property distinct from those conferred by the mortgage.... [It] declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction.

*Roach,* 824 F.2d at 1377–78. Under New Jersey law, a debtor may redeem his house by tendering the full amount due at any time up to ten days after the foreclosure sale and the bankruptcy laws extend that right until sixty days after the order for relief.[4] But forcing a home lender to accept payment of a foreclosure judgment over the three to five years of a Chapter 13 plan goes far beyond that. Indeed, the practical effect of our accepting Perry's argument would be to extend the right of redemption in New Jersey's bankruptcies from sixty days to a substantial term of years. Such an extension not only would be without statutory authorization but

would appear at odds with the congressional intent behind § 108, the Code provision extending the right of redemption until sixty days following the order of relief.

*Roach* stands for the proposition that under New Jersey law, a New Jersey home mortgage lender, upon the entry of a foreclosure judgment, has an immediate right to payment in full and that the cure provisions of § 1322(b)(5) do not authorize an alternation or deferral of that right. While § 1322(b)(2) would clearly authorize such an alteration or deferral if the lender's claims were not secured solely by a mortgage on the debtor's residence, First National's claim is so secured and its rights cannot be "modified" under that section. Like the Court of Appeals for the Ninth Circuit in *Seidel,* 752 F.2d at 1384, we believe that deferral of a presently due obligation for a period of three to five years constitutes a "modification" of that obligation within the plain meaning of that word.

Nevertheless, Perry and her amici offer three arguments for concluding that her plan is not a prohibited modification. First, they argue that "modifications" were permitted in prior cases, such as *Roach,* that allowed debtors to pay the arrearage and reinstate accelerated mortgages, where state law would require payment in full. But each of those cases found that Congress intended to distinguish "cures"—that restore the original mortgage relationship—from "modifications"—that change the contract between homeowner and lender in some other way. Those cases then held that § 1322(b)(5) specifically permits cures despite the general prohibition on modifications. Perry does not seek to cure her mortgages as that term is commonly understood. "Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Appeal of Capps,* 836 F.2d 773, 777 (3d Cir.1987). When a plan calls for the payment of a foreclosure judgment over the period of the plan, it does not restore the pre-default *status quo.* Thus, Perry's plan does not

---

**4.** 11 U.S.C. § 108(b); *see Roach,* 824 F.2d at 1371–72.

fall within § 1322(b)(5)'s express allowance of cures.

The second argument relies on § 1325(a), which mandates that plans meeting its requirements be confirmed. *In re Szostek*, 886 F.2d 1405, 1411 (3d Cir.1989). Perry argues that that section proves that paying a foreclosure judgment in full with interest during a Chapter 13 plan is not a forbidden modification. Specifically, § 1325(a) provides in relevant part that

> [t]he court shall confirm a plan if (5) with respect to *each allowed secured claim provided for by the plan*—(B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

But this court has heretofore held that because § 1325(a)(5)(B)(ii) functions as a limit on modifications of creditors' rights, "a necessary precondition to the application of § 1325(a)(5)(B)(ii) is that the debtor's plan must have effected a modification in the mortgage contract." *Capps*, 836 F.2d at 776. Section 1325(a)(5)(B)(ii) and § 1322(b)(2) must be read together, and since § 1322(b)(2) prohibits a plan that works a modification of the rights of a home mortgage lender, the fact that such a plan may meet the requirements of § 1325(a)(5)(B)(ii) is simply not relevant.

The third argument adopts the rationale of *Brunson*. *Brunson* recognized that § 1322(b)(2) was intended to provide protection for home lenders from modifications, but reached a different conclusion as to the type of modification prohibited. Payment of a foreclosure judgment with interest over the life of a Chapter 13 plan, at least in theory, provides the lender with his full expectations. Thus *Brunson* concluded that § 1322(b)(2) was directed at more drastic modifications:

> [P]ortions of the legislative history of 1322(b)(2) suggest that the term "modification" was intended to encompass an alteration of the terms of the security interest, as is otherwise permitted in the Code, including the potential for a reduction in the allowed secured claim to the value of the collateral under 11 U.S.C. § 506(a).

87 B.R. at 309. Where a creditor's secured claim exceeds the value of his collateral, § 506(a) treats the claim as secured only to the value of the collateral and treats the remaining portion of the claim as unsecured.[5] In other words, home lenders who are undersecured would be protected by § 1322(b)(2) from having their secured claim reduced pursuant to § 506(a) to the value of the debtor's home.

*Brunson*'s interpretation of what constitutes a modification did not survive this court's decision in *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990). There, we concluded that because § 1322(b)(2)'s exception applies only to "secured claims", the section does not apply to the unsecured portion of an undersecured lender's claim and that portion of the claim may be modified. *Id.* at 127. Thus we read § 1322(b)(2) to protect only that portion of the home lender's claim that was actually "secured."[6] Because *Wilson* eliminated the only other major protection that § 1322(b)(2) could have provided home lenders, we must either find home lenders protected against the "modification" that Perry proposes or else give home lenders essentially the same treatment as other lenders.

An amicus contends that we could interpret § 1322(b)(2) to prohibit modification of the terms of the original mortgage, other than the amount and payment schedule of

---

5. Section 506(a) states in relevant part that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

6. Perry also tries to argue from *Wilson* that "§ 1322(b)(2) is not an iron clad preclusion to modification" of a home lender's security interest, and therefore it should not provide an absolute shield in this case either. But *Wilson* determined that only the secured portion of the home lenders' claim was protected by § 1322(b)(2), and held that, to the extent § 1322(b)(2) did apply, the prohibition on modifications was firm.

the loan; for example, no alteration would be permitted to a term requiring the debtor to maintain an escrow account for real estate taxes. Brief for Consumer Education and Protective Assoc., at 17–18. We are not persuaded that Congress included § 1322(b)(2) in the Code for such a minimal purpose or that Congress believed such minor protection would significantly reassure home lenders. If § 1322(b)(2) is to provide home mortgage lenders with any meaningful protection, it must prohibit Chapter 13 plans that modify their rights by allowing the debtor to pay a foreclosure judgment over the three to five years of the plan.

### CONCLUSION

Because First National retains a "security interest" in real property that is Perry's principal residence, and Perry's plan proposes to "modify" First National's claim secured only by that interest, § 1322(b)(2) prohibits confirmation of Perry's plan. Accordingly, we will affirm the judgment of the district court.