In re Sydney & Ethel JACKSON, Debtors.

**CLIFTON SAVINGS BANK, S.L.A., Appellant,**

v.

**Sydney & Ethel JACKSON as debtors, and Robert Wood, Esq., as Chapter 13 Trustee for Case No. 94–15916, Appellees.**

Civ. A. No. 95–1006.

United States District Court, D. New Jersey.

July 17, 1995.

Gross & Ruderman by E. Mark Gross, White Plains, NY, for appellant.

Ciervo & Strozyk–Ciervo by George A. Ciervo, Willingboro, NJ, for appellees.

## OPINION

IRENAS, District Judge.

Clifton Savings Bank ("bank") appeals an order (i) denying the bank's motion to reconsider an order entered on December 16, 1994, by the Honorable Judith H. Wizmur, U.S.B.J., in a Chapter 11 bankruptcy action (Case No. 93–15200) filed by Sydney and Ethel Jackson ("debtors") and (ii) denying the bank's motion to declare the debtors' newly filed Chapter 13 petition (Case No. 94–15916) void *ab initio*. In its December 16 order the bankruptcy court (i) denied the bank's motion to covert the case to Chapter 7, (ii) dismissed the Chapter 11 case, and (iii) directed that the debtors "shall file a new Chapter 13" within fifteen days. (Appellant's Ex. 48.) The bank argues that under 11 U.S.C. § 109(g)(2) the new Chapter 13 was void because it was filed within 180 days of a voluntary dismissal and that the court erred in not converting the original, unconfirmable, Chapter 11 to a Chapter 7. It asks that we reinstate the dismissed Chapter 11 and direct the bankruptcy court to convert that case to Chapter 7. The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

## I. INTRODUCTION

In *First Nat. Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991), the Third Circuit held that the bankruptcy court lacked the power to reinstate the mortgage in a Chapter 13 case. In 1994 Congress reacted to this perceived inequity by passing the Bankruptcy Reform Act of 1994 ("1994 Act") which would permit a Chapter 13 debtor to cure an existing default and reinstate the mortgage as part of the plan. 11 U.S.C. § 1322(c) (West

Supp.1995). Congress, however, chose not to make this provision applicable "with respect to cases commenced under title 11 [the Bankruptcy Code] of the United States Code before the date of the enactment of this Act." Pub.L. No. 103–394, § 702(b)(1).

Debtors whose cases were pending on October 22, 1994, when the new § 1322(c) became effective, strove to take advantage of this law without running afoul of the anti-retroactivity provision. However, these efforts found debtors trapped between the provisions of 11 U.S.C. § 348(a) and 11 U.S.C. § 109(g)(2). Moving to dismiss an existing case with the hope of immediate refiling might violate § 109(g)(2), which forbids refiling of new case within 180 days of a "voluntary dismissal ... following the filing of a request for relief from the automatic stay." Since in many cases the judgment holder will have already moved for such relief, the 180 day waiting period would be fatal because the sheriff's sale will have occurred by the time the debtor is eligible to refile.

Some debtors had sought to evade *Perry* by attempting to confirm a plan under the more flexible provisions of Chapter 11. When § 1322(c) passed there was, of course, a desire to change the proceeding back to a Chapter 13. Such conversions are permitted under 11 U.S.C. § 1112(d). However, § 348(a) makes it clear that the conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." Thus, conversion would leave the debtor with a Chapter 13 proceeding ineligible for the benefits of the new § 1322(c).

In this case debtors' counsel sought to avoid the Scylla and Charybdis of §§ 348(a) and 109(g)(2) by filing an "Application for Appropriate Action," anticipating that the bankruptcy judge would "dismiss" the pending case with the express direction or implicit understanding that the debtor would immediately file a new Chapter 13 petition. It was hoped that (i) use of the phrase "appropriate action" in the motion would prevent the court

ordered dismissal from being deemed "voluntary" under § 109(g)(2) and (ii) categorizing the events as a dismissal and refiling rather than as a conversion would evade the provisions of § 348(a). Whether this legal legerdemain should receive judicial approval is the subject of this appeal.

## II.  FACTUAL BACKGROUND

In May 1991, debtors defaulted on a $112,-000 note secured by a mortgage on debtors' principal residence. The bank obtained a foreclosure judgment on June 19, 1992. On September 21, 1992, before the bank could proceed with a sheriff's sale, debtors filed for bankruptcy under Chapter 13 (Case No. 92–14649), automatically staying the sale. *See* 11 U.S.C. § 362(a). On November 13, 1992, the bank filed an application seeking relief from the automatic stay. The bankruptcy court subsequently entered an order directing the debtors to make adequate protection payments. *See* 11 U.S.C. § 361.

Because debtors could not reinstate the note which was subject to the final foreclosure judgment, *see Perry*, 945 F.2d at 61, they could not confirm a Chapter 13 plan, and the case was converted to Chapter 11 on January 19, 1993. After the debtors failed to pay a conversion fee the bankruptcy court dismissed the case on June 18, 1993. *See* 11 U.S.C. § 1112(b)(10).

On November 15, 1993, debtors again filed for bankruptcy, this time under Chapter 11 (Case No. 93–15200), once more staying the bank's efforts to execute upon the foreclosure judgment. Debtors' first plan and disclosure statement was unconfirmable as it offered no dividend to unsecured creditors.[1] After twice amending the disclosure statement, debtors filed a Second Amended Disclosure Statement and accompanying First Amended Plan offering a ten percent dividend to unsecured creditors. On July 20, 1994, the bankruptcy court entered an order approving the Second Amended Disclosure Statement. Because the property was worth less than the

---

**1.** Pursuant to 11 U.S.C. § 1126(g), "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under

the plan on account of such claims or interests." Therefore, the plan could not be confirmed on either a consensual basis under 11 U.S.C. § 1129(a)(8) or by cramdown under 11 U.S.C. § 1129(b)(2)(B)(ii).

amount due on the mortgage, the bank was both a secured and unsecured creditor. *See* 11 U.S.C. § 506. In its status as the principal unsecured creditor the bank voted to reject the plan.

On October 27, 1994, five days after the 1994 Act became effective, the bank brought a motion for relief from the automatic stay and for conversion of debtors' bankruptcy case from Chapter 11 to Chapter 7. Debtors responded on November 22, 1994, with an "Application for Appropriate Action" asking the court to dismiss the case *sua sponte* in light of the 1994 Act. At a hearing on December 1, 1994, the bankruptcy court found that the new § 1322(c) might enable debtors to propose a feasible Chapter 13 reorganization plan. In an order entered on December 16, 1994, the court dismissed the Chapter 11 and ordered debtors to file a new Chapter 13 "[w]ithin fifteen (15) days and after Clifton Savings Bank submit[ted] its Statement of Contractual arrearages." (Appellant's Ex. 48.)

On December 14, 1994, the bank moved to reconsider the dismissal of debtors' Chapter 11. Two days later, when the bankruptcy court actually signed the dismissal order,[2] debtors again filed for bankruptcy under Chapter 13 (Case No. 94–15916). On December 23, 1994, the bank moved to declare this filing void under 11 U.S.C. § 109(g)(2). After a hearing on January 24, 1995, both motions were denied in the court's order dated February 6, 1995.

## III. DISCUSSION

■ On October 22, 1994, Congress amended the Bankruptcy Code to provide:
(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

11 U.S.C.A. § 1322(c) (West Supp.1995). This newly enacted provision would remedy the obstacle posed by *Perry* by allowing debtors to reinstate a mortgage note secured by a property subject to a foreclosure judgment.

The 1994 Act also included a transition rule which provides: "[T]he amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act [October 22, 1994]." Pub.L. No. 103–394, § 702(b)(1). Debtors attempted to circumvent this provision by filing their "Application for Appropriate Action," which stated in relevant part:

3. On October 22, 1994 the Bankruptcy Reform Act of 1994 became law (hereinafter known as "Reform Act") when the same was signed by President Clinton.

4. Debtor(s) would like to be in a position to promptly file a new petition under the said Reform Act. . . .

. . . .

6. In view of the clear intent of Congress to benefit Debtor(s) by certain relevant portions of such act and especially section 301 thereof, it is respectfully suggested that a special case exists and that appropriate action should be taken by the court *sua sponte.*

7. Wherefore, Debtor(s) pray for appropriate action *sua sponte.*[3]

---

2. Although the bankruptcy court order was dated December 16, 1994, Judge Wizmur had ruled from the bench at the hearing on December 1, 1994, and the bank's reconsideration motion was based on that oral ruling.

3. Indeed, the "Application for Appropriate Action" is inherently illogical. In paragraph 7 of the application, debtors' "pray for appropriate action *sua sponte.*" However, *"sua sponte"* is defined: "Of his or its own will or motion; voluntarily; without prompting or suggestion." *Black's Law Dictionary* 1277 (5th ed. 1979). If a

party requests *sua sponte* relief from a court, the relief is not "without prompting or suggestion," and therefore is not *sua sponte.* Judge Wizmur recognized this incongruity when she crossed out the words *"sua sponte"* from the draft order submitted by debtors' counsel.

At the January 24, 1995 hearing on the motion to reconsider Judge Wizmur's order of December 16, 1994, the following colloquy occurs:

MR. CIERVO [debtors' counsel]: I noticed—I noticed one thing when I looked at the minutes, your Honor, and this may be the reason why someone on your Honor's legal clerical

(Appellant's Ex. 40 (emphasis in original).) Additionally, in its dismissal of the Chapter 11 proceeding on December 1, 1994, the bankruptcy court acknowledged that the debtors' primary objective was to benefit from the 1994 Act, explicitly directing debtors to refile under Chapter 13 as a condition of the dismissal order. (Appellant's Ex. 42 at 51.) It is also apparent that both parties were aware that the bankruptcy court's dismissal of the Chapter 11 was for the express purpose of allowing a subsequent refiling under Chapter 13. Clearly, the motivation for both the filing of the "Application for Appropriate Action" and the bankruptcy court's dismissal of the Chapter 11 was to avoid the transitional rule specified by Congress in the 1994 Act.

The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 ("1986 Act"), which added Chapter 12 to the bankruptcy code, contained an identical transitional rule to Section 702 of the 1994 Act. *See* Pub.L. No. 99–554, § 302(c)(1), 100. Stat. 3088 (1986). Family farmers in pending bankruptcy proceedings who wished to take advantage of Chapter 12 requested dismissals in order to refile under the new law. However, the Fifth and Seventh Circuits have treated these dismissals and refilings as conversions. *See, e.g., In the Matter of Sadler,* 935 F.2d 918, 920 (7th Cir.1991); *In the Matter of Howe,* 913 F.2d 1138, 1147–48 (5th Cir.1990); *In the Matter of Sinclair,* 870 F.2d 1340, 1345 (7th Cir. 1989).

*Sinclair* involved a debtor's request to the bankruptcy judge to allow both a dismissal of their Chapter 11 case and a refiling under Chapter 12, as amended by the 1986 Act, thus avoiding the ban against retroactivity in the transitional rule. The court affirmed the denial of the request, explaining:

> The Sinclairs do not want to dismiss the case with prejudice, pay all of their accrued debts, and then file a fresh bankruptcy action that could go forward from the date of refiling. They want, instead, to file a Chapter 12 case that would be administered as if it had been commenced in 1985. This is conversion by another name.

*In the Matter of Sinclair,* 870 F.2d at 1345.

Following *Sinclair,* the United States Bankruptcy Court in the District of New Hampshire recently denied a debtor's motion to convert a Chapter 11 case to Chapter 13 as amended by the 1994 Act or, in the alternative, to dismiss the debtor's Chapter 11 so that the debtor could refile under the amended Chapter 13. *In re Fitzpatrick,* 175 B.R. 436 (Bankr.D.N.H.1994). Noting that debtors desired to take advantage of the increases to the Chapter 13 debt ceiling as amended by the 1994 Act, the court commented that "to allow dismissal or re-filing would surely change the level playing field" that the debtors and the creditors then occupied. *Id.* at 438.

■ Unlike Humpty Dumpty, neither a litigant nor a court may manufacture words to mean what it chooses them to mean.[4] A

---

staff may have presented the order to your Honor with the words sua sponte struck. I noticed the minutes said, voluntary, by somebody—one of the clerks—
THE COURT: No, no, no. I struck the sua sponte words.
MR. CIERVO: Oh, okay.
THE COURT: Specifically for the purpose of retaining the issue to be decided. I—I guess I assumed—first of all, I wasn't confident when I signed that order that it was a sua sponte—
MR. CIERVO: Oh, okay.
THE COURT: —I didn't decide one way or the other, whether it was sua sponte or whether or whether it was not. But I did not want to confirm, without argument and without closer consideration—
MR. CIERVO: Oh.
THE COURT: —whether it was sua sponte. I recall signing that order that way.

MR. CIERVO: Oh, I—I—
THE COURT: It would not have been struck by anyone.
(Appellant's Ex. 60 at 14.)

4. After encountering Humpty Dumpty in her adventures through the looking glass, Alice became engaged in an argument over the meaning of words:

> 'There's glory for you!'
> 'I don't know what you mean by "glory",' Alice said.
> Humpty Dumpty smiled contemptuously. 'Of course you don't—till I tell you. I meant, "there's a nice knock-down argument for you!" '
> 'But "glory" doesn't mean "a nice knock-down argument",' Alice objected.

duck does not cease to be a duck because we call it a moose. A request for conversion does not cease to be a request for conversion simply by designating it an "Application for Appropriate Action." We see no reason to characterize the bankruptcy court's dismissal order, which includes a condition that the debtors refile immediately, as anything but the granting of a faintly concealed conversion motion.[5]

Because this Court holds that the bankruptcy court order of December 16, 1994, is an order converting the pending Chapter 11 case (Case No. 93–15200) to a Chapter 13 proceeding, we will affirm the bankruptcy court's order to the extent that its operative effect is to leave pending a Chapter 13 proceeding. However, we direct that such proceeding be deemed one arising upon a conversion of the prior Chapter 11 and one to which 11 U.S.C. § 348(a) applies.

Furthermore, because we find that the Chapter 11 case was actually converted to a Chapter 13 proceeding, we must dismiss Case No. 94–15916: "[I]f a bankruptcy action is pending, a bankruptcy action which purports to affect the same debt cannot be maintained." *In re Prudential Insurance Co. of America*, 40 B.R. 603 (Bankr.N.D.Ga.1984) (citing *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925); *In re Stahl, Asano, Shigetomi Assoc.*, 6 B.R. 232 (Bankr. D.Haw.1980).

Therefore, we grant the bank's motion to dismiss Case No. 94–15916 and direct the bankruptcy court to continue Case No. 93–15200 as a Chapter 13 proceeding. An appropriate order will be entered on even date herewith.

---

'When I use a word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.'
'The question is,' said Alice, 'whether you *can* make words mean so many different things.'
'The question is,' said Humpty Dumpty, 'which is to be master—that's all.'

.    .    .    .    .

'That's a great deal to make one word mean,' Alice said in a thoughtful tone.
'When I make a word do a lot of work like that,' said Humpty Dumpty, 'I always pay it extra.'
Lewis Carroll, *Alice in Wonderland and Through the Looking Glass* 177–78 (1994) (emphasis in original).

**5.** We recognize that both the bank and debtors spend the majority of their briefs discussing whether § 109(g)(2) precludes the Chapter 13 filing. Because our ruling treats Judge Wizmur's order as one converting an existing Chapter 11 case to one under Chapter 13, it was not necessary for the Court to consider the operation of § 109(g)(2). However, were the Court to treat the bankruptcy order as in fact being one of dismissal, there appears little doubt that the dismissal was voluntary. Indeed, debtors' moving papers aver that debtors "would like to be in a position to promptly file a new petition under [the 1994 Act]." A clearly expressed desire by debtors' counsel to obtain a dismissal makes the ensuing dismissal "voluntary," even where the moving papers request "appropriate action" rather than expressly asking for dismissal. We can find no sound legal basis for arguing that the adoption of the new § 1322(c) in 1994 somehow carved out an implied exception to the plain language of § 109(g)(2).