**In the Matter of John
BRUNSON, Debtor.**

**Bankruptcy No. 87–04353.**

United States Bankruptcy Court,
D. New Jersey.

Jan. 28, 1988.

David Paul Daniels, Camden, N.J., for debtor.

William M.E. Powers, III, Medford, N.J., for Citicorp Homeowners Services, Inc.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

Debtor's chapter 13 plan is challenged at confirmation by the objections of Citicorp Homeowners Services, Inc. The issues presented include whether the bankruptcy court has subject matter jurisdiction to hear the case, whether the debtor may satisfy a judgment of foreclosure through a chapter 13 plan, and whether a plan that proposes a balloon payment during the last month of the plan can pass the feasibility test of 11 U.S.C. § 1325(a)(6).

## FACTS

Debtor filed his chapter 13 petition on July 17, 1987. The petition reflects arrearages of $14,673.92 under the mortgage held by Citicorp Homeowners Services, Inc and a tax debt of $700. No unsecured creditors are listed. Debtor's residence is valued at $70,000. A judgment of foreclosure was entered against the property on April 27, 1987, declaring a total sum of $71,105.88 due to Citicorp.

The first plan submitted by debtor envisioned the curing of arrearages and the reinstatement of the mortgage between debtor and Citicorp. Following the decision of the Third Circuit in *In the Matter of Roach*, 824 F.2d 1370 (3d Cir.1987), rendered on July 31, 1987, debtor's plan was amended to provide for payment of the judgment of foreclosure in full through the plan.

### I. Jurisdiction of the Bankruptcy Court

Citicorp first contends that the entry of a foreclosure judgment in state court prior to the filing of a chapter 13 petition deprives the bankruptcy court of the subject matter jurisdiction to administer the foreclosed property as part of the debtor's estate. This argument must be rejected.

Jurisdiction to hear Title 11 cases is vested in the federal district court. 28 U.S.C. § 1334. Under 28 U.S.C. § 1334(d), the district court has exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

The bankruptcy court, as a unit of the district court under 28 U.S.C. § 151, hears those proceedings that district courts refer to it. 28 U.S.C. § 157(a). See *In re Meyertech Corp.*, 831 F.2d 410 (3d Cir.1987). By Standing Order, the District Court for the District of New Jersey has referred all bankruptcy cases and proceedings to the bankruptcy judges for this district.

The question becomes whether property which has been the subject of the entry of a foreclosure judgment in state court prior to the filing of a chapter 13 petition continues to be "property of the estate" under 28 U.S.C. § 1334(d). Under 11 U.S.C. § 541(a)(1), the bankruptcy estate created at the commencement of a case under Title 11 is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." The provision is expansive in its scope, as noted by the United States Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). See also *In re Cynthia Ward*, 837 F.2d 124 (3d Cir.1988).

Upon the commencement of the case, a debtor retains the property rights that existed under state law at the time of filing. Under New Jersey law, a final judgment of foreclosure "declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction." *In the Matter of Roach, supra*, at 1378, citing *Eisen v. Kostakos*, 116 N.J.Super. 358, 282 A.2d 421 (App.Div.1971) and

*Central Penn National Bank v. Stonebridge Ltd.*, 185 N.J.Super. 289, 448 A.2d 498 (Ch.Div.1982). Debtor retains legal title to the property until the completion of the process of sheriff sale, expiration of the redemption period and transfer of the deed to the successful bidder. Through an "equity of redemption" stemming from New Jersey common law, debtor retains the opportunity to satisfy the judgment in full, and may redeem the foreclosed property even after sheriff sale by payment in full of the obligation. Following sheriff's sale, redemption is available within the 10 day period fixed by New Jersey Court Rule 4:65–5 for objections to the sale and until an order confirming the sale if objections to the sale are filed. *Hardyston National Bank v. Tartamella*, 56 N.J. 508, 513, 267 A.2d 495 (1970).

In this case, under New Jersey state law, at the commencement of the bankruptcy case, following the entry of a judgment of foreclosure against the property in question, debtor retained legal title to the property, the opportunity to redeem the foreclosed property by payment in full of the judgment, and actual possession. I conclude that the foreclosed property remained property of the estate under Section 541 and was therefore subject to the jurisdictional reach of the district court, and the bankruptcy court by reference, under 28 U.S.C. § 1334(d).

## II. Satisfaction of a Judgment of Foreclosure through a Chapter 13 Plan

■ Relying on the recent Third Circuit Court of Appeals decision of *In the Matter of Roach, supra,* Citicorp next contends that a debtor is precluded from satisfying a judgment of foreclosure through a chapter 13 plan. In *Roach,* the Court noted that beyond the point of the entry of a foreclosure judgment, "... there are no substantial federal interests that would justify ignoring property interests created by the judgment of a New Jersey Court", *Id.* at 1377, and the Court could perceive no reason "... why Congress might have felt it necessary or desirable to authorize the ex-

tinguishment or suspension of state judgments." *Id.* at 1378. Again, this argument must be rejected.

In *Roach,* the "sole relevant issue" presented to the Court was "whether 11 U.S.C. § 1322(b) evidences a congressional intent to authorize *cure of a default* on a home mortgage after there has been a contractual acceleration of the full mortgage debt, a foreclosure judgment, and a foreclosure sale, so long as the state law redemption period has not expired." *Id.* at 1371 (emphasis added). Concluding first that Section 1322(b) permits the curing of default following acceleration of the mortgage, which would therefore permit the deacceleration of the mortgage, the Court further concluded that the opportunity to cure defaults under Section 1322(b) expires upon the entry of a judgment of foreclosure. Under New Jersey law, explained the Court, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. No contractual relationship exists between the parties, and the mortgagee's rights are those that arise from its judgment. The concept of the "curing" of defaults and reinstatement of the long-term contractual relationship envisioned by Section 1322(b)(5) has no relevance where the contractual relationship has terminated by operation of state law. Following termination, the contract cannot be reinstated.

The significant conceptual distinction in this case is the intent of the debtor to respect the state court judgment received by Citicorp and to satisfy the judgment in full through the plan. There is no attempt to merely cure arrearages and reinstate the contractual relationship between the parties. For the reasons expressed below, I conclude that a debtor may satisfy a judgment of foreclosure in full through a chapter 13 plan.

Initially, it must be highlighted that the primary focus of the chapter 13 opportunity afforded by Congress to debtors to repay allowed claims against them over a period of time is the ability to retain their

property[1]. As the *Roach* Court recognized, the chapter 13 framework is designed to benefit debtors and creditors alike.

Chapter 13 of the Bankruptcy Code allows an individual bankrupt to reorganize his or her affairs without a liquidation of assets in much the same way as chapter 11 accords that right to businesses. Its purpose "is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period" of from three to five years. H.R.Rep. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Adm. News 1978, pp. 5787, 6079, *reprinted in* L. King, *Collier on Bankruptcy* App. 2 (1987) (hereinafter *Collier*). Congress believed that chapter 13 would benefit debtors by permitting a debtor to "retain his property by agreeing to repay his creditors" and to "avoid the stigma attached to straight bankruptcy," and would benefit creditors because "their losses will be significantly less than if their debtors opt for straight bankruptcy." *Id. Accord* S.Rep. 989, 95th Cong., 2d Sess. 118 (1978), U.S.Code Cong. & Admin.News 1978, p. 6079, *reprinted in Collier* App. 3. *Id.* at 1372.

Chapter 13 has been recognized as the chapter favored by Congress for consumer debtors. Where a debtor is found capable of fulfilling the terms of a chapter 13 repayment agreement, he faces dismissal of his chapter 7 filing under the "substantial abuse" provision of the Bankruptcy Code, 11 U.S.C. § 707(b), *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985). Furthermore, debtors are encouraged to opt for a chapter

13 repayment plan by substantially more liberal nondischargeability provisions. Under a chapter 13 plan, only alimony and support payments are nondischargeable. Compare Section 1328(a)(2) and Section 523(a)(1) through (10) (applicable to chapters 7, 11 and 12).

In most instances, the property that is sought to be retained by a chapter 13 debtor is the principal residence of the debtor. The chapter 13 opportunity to retain the residence and to repay claims represents the last resort of most debtors to save their homes. The Standing chapter 13 Trustee for the vicinages of Trenton and Camden in the District of New Jersey noted that of the nearly 7.8 million dollars collected in these vicinages during the fiscal year ending September 30, 1987, distributions of 5.25 million dollars were made to satisfy mortgage claims. Presently, there are over 6,000 cases pending. The Standing Trustee estimates that approximately 70% to 80% of the cases represent debtors' attempts to retain their home. These figures do not differentiate between those debtors who have filed chapter 13 petitions before the entry of a judgment of foreclosure in state court and those against whom foreclosure judgments have been entered. Nevertheless, it is reasonable to conclude that a decision that would deny debtors the opportunity to satisfy a foreclosure judgment through a chapter 13 plan would drastically reduce the number of debtors who could utilize the chapter 13 process to retain their property and to repay their debts through a plan.

Chapter 13 provisions are replete with references to the manner in which "claims" against the debtor may be satisfied through a chapter 13 plan.[2] The term

---

1. "The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7 is that it permits the debtor to protect his assets." House Rep. No. 95–595 at p. 118 reprinted in 1978 U.S.Code Cong. & Admin.News at 5787, 6079.

2. For example, note the following references to "claims":
   (a) 1322(a)(2) payment of priority "claims"
   (b) 1322(a)(3) treatment of "claims" within each class
   (c) 1322(b)(1) designation of classes of unsecured "claims"
   (d) 1322(b)(2) modification of secured and unsecured "claims"
   (e) 1322(b)(4) concurrent payment of secured and unsecured "claims"
   (f) 1322(b)(6) payment of post-petition "claims"
   (g) 1322(b)(8) payment of "claims" from property of the estate or property of the debtor
   (h) 1325(a)(4) best interest test (liquidation test) as to each "claim"
   (i) 1325(a)(5) requirements for each allowed secured "claim"

"claim" is obviously fundamental in analyzing the question presented: whether Congress specifically and expressly intended to permit a chapter 13 debtor to satisfy a judgment through a repayment plan. Reference must be made to the definition of the term contained in the General Provisions of the Bankruptcy Code. 11 U.S.C. § 101(4)(A) defines "claim" as a

> "right to payment, *whether or not such right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, *secured, or unsecured;*" (emphasis added)

The Bankruptcy Reform Act of 1978 substantially broadened the definition of claim found in the debtor rehabilitation chapters of the preexisting bankruptcy law. As noted in Senate Report 95–989 at p. 22, reprinted in 1978 U.S.Code Cong. & Admin. News, at 5808, "by this broadest possible definition and by the use of the term throughout the Title 11, ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court."

We are reminded by the *Roach* Court that the bankruptcy code must be applied in the context of state law. State law cannot be displaced in the absence of explicit congressional intent to preempt or unless there is an unavoidable conflict between the state law and the federal law. The conflict between state law and federal law here is presented in the conflict between the right of a holder of a final foreclosure judgment to immediate payment on the entire obligation or the opportunity to proceed to sheriff's sale under state law versus the opportunity of a debtor to satisfy the secured "claim", albeit reduced to judgment, through chapter 13 payments, under federal law.[3] I conclude that in this pre-sheriff's sale context, by the express inclusion of judgments in the definition of

the term "claim", Congress intended to permit a debtor to satisfy a judgment in full through a properly constituted plan.

Citicorp contends that under state law, as a holder of a judgment of foreclosure, it is entitled to immediate payment of the debt, either by the debtor through redemption or by the sale of property through sheriff sale. Permitting the debtor to satisfy the judgment amount over three to five years through a chapter 13 plan violates the ban against modification of Citicorp's security interest under 11 U.S.C. § 1322(b)(2) and cannot be allowed.

11 U.S.C. § 1322(b)(2) permits a chapter 13 plan to:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

It is undisputed that Citicorp holds a claim (reduced to judgment) secured only by a security interest in real property that is the debtor's principal residence.

The issue presented poses a difficult problem of statutory interpretation. The clause may reasonably be interpreted to mean that any modification of the state law rights of mortgage lenders is prohibited, including the right to immediate payment of the entire sum due or the right to proceed to sheriff's sale without delay. However, we must consider that the statute prohibits the opportunity to "modify" a home lender's "claim", whether or not reduced to judgment. The clause does not prohibit repayment of the claim through a chapter 13 plan.

The term "modify" is not defined in the Code. References in the legislative history are instructive here. The Bankruptcy Code of 1978 was enacted as a result of a legislative process that commenced with the cre-

---

**3.** A distinction must be drawn following sheriff's sale, after which the state law redemption period expires in accordance with New Jersey Court Rule 4:65–5, as noted above. The *Roach* Court recognized in Footnote 1 of the opinion that 11 U.S.C. § 108(b) extends the redemption period for 60 days following the filing of a petition. No such time limitation is apparent prior to sheriff's sale.

ation of the Commission on the Bankruptcy Laws of the United States in 1970. The recommendations contained in the 1973 Commission Report were substantially adopted in the 1978 Code. In the Commission Report, the opportunity to modify the claims of a secured creditor under a chapter 13 plan included authorization to change "the size and timing of installment payments as well as the alteration or modification of other provisions of the secured creditor's contract." Bankruptcy Laws Commission's Report, H.R.Doc. 137, pt. 2, 93d Cong., 1st Sess. 205 (1973). In the House Report of the 95th Congress[4], an "important change in the treatment of secured creditors" was noted. The ability to "modify" the claims of a secured creditor was described in terms of arriving at the amount of a secured claim by ascertaining the value of the collateral. The secured claim is recognized only to the extent of the value of the collateral. "To the extent that [the] claim against the debtor exceeds the value of his collateral, he is treated as having an unsecured claim, and he will receive payment along with all other general unsecured creditors." House Rep. No. 95–595 at p. 124, reprinted in 1978 U.S. Code Cong. & Admin.News at 6085.

Following the passage of H.R. 8200 in the House of Representatives and S.2266 in the Senate, a final amendment to Section 1322(b)(2) incorporating a ban against modification of the security interest of a home mortgagee or lender was passed. *Grubbs v. Houston First American Savings Association,* 718 F.2d 694 (5th Cir.1983), rev'd., 730 F.2d 236, 242 (5th Cir.1984) (*en banc*). The amendment responded to the concerns expressed by such residential lenders in legislative hearings about provisions (i.e., Section 1322(b)(2)) that permitted modification of a secured claim by reducing installment payments or by reducing the secured amount of the claim to the value of the collateral. *Id.* at 245. For further review of relevant legislative history, see *In re Seidel,* 752 F.2d 1382 (9th Cir.1985) and *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn. 1982).

The referenced portions of the legislative history of 1322(b)(2) suggest that the term "modification" was intended to encompass an alteration of the terms of the security interest, as is otherwise permitted in the Code, including the potential for a reduction in the allowed secured claim to the value of the collateral under 11 U.S.C. § 506(a). Nowhere in the legislative history of Section 1322(b)(2) is there any indication that the ban against modification of a home mortgagee's security interest includes a ban against the opportunity of the debtor to satisfy a judgment of foreclosure in full through a chapter 13 plan.

To be distinguished is the Ninth Circuit opinion *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). In *Seidel,* the Court concluded that a debtor may not use a chapter 13 petition to delay payment of an unaccelerated debt that matured prior to the filing of the petition. The court concluded that the creation of a new payment schedule through a chapter 13 process would involve modifying the rights of the mortgagee, which is banned under Section 1322(b). However, the court distinguished cases in which the debt came due before the filing of a chapter 13 petition only because a creditor had accelerated the entire debt after a default in installments, versus a debt "which had already fully matured and was immediately due and payable even before the plan was filed". *Id.* at 1383. There is no discussion in the case regarding the impact of the entry of a judgment of foreclosure following acceleration of a debt after a default.

The distinction to be drawn is that the maturity date in the *Seidel* circumstance was set by agreement of the parties rather than by the entry of a judgment and by operation of state law. The provisions of Section 1322(b)(2), which protect the "security interest" in debtor's principal residence, is based on the Section 101(45) definition of "security interest" as a lien created by an agreement. Even though the contractual terms between the parties in this case have merged into the entry of the judgment of foreclosure, the security inter-

4. The 95th Congress enacted the Bankruptcy Code of 1978.

est or lien against the property continues to be the product of the consensual arrangement between debtor and Citicorp. Unlike the *Seidel* example, in which the obligation was sought to be extended beyond its mutually agreed upon maturity date, the debtor here does not seek an extension of the maturity date of the debt, but merely an opportunity to pay off the judgment in full over the life of the plan.

Further support for the proposition that the satisfaction of a residential mortgagee's judgment of foreclosure through a chapter 13 plan does not constitute a modification of the claimant's security interest is found in a review of the provisions of 11 U.S.C. § 362. In pertinent part, Section 362(a) operates as an automatic stay, "applicable to all entities", of:

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secured a claim that arose before the commencement of the case under this title;

The imposition of the stay against enforcement of judgments and liens is not qualified by an exception for judgments of foreclosure. The express provisions enjoin all holders of claims, whether or not those claims have been reduced to judgment, from enforcing their state law rights. It is difficult to conclude that the imposition of the automatic stay is an action which "modifies" the rights of a secured claim holder.

We are instructed in the recent Third Circuit case of *In re Capps*, 836 F.2d 773 (3d Cir.1987), that where statutory provisions appear on their face to conflict, the court's responsibility is to fit the sections together "in a way that will effectuate the Congressional intent." *Id.* at 776. Here, the competing statutory provisions include the definition of claim encompassing secured claims that have been reduced to judgment, the opportunities of a chapter 13 debtor to satisfy claims through a chapter 13 plan, the automatic stay provisions and the ban against modification of the secured claims of residential mortgagees. These competing provisions must be "fit together" to effectuate the Congressional intent of favoring chapter 13 repayment plans, affording debtors the opportunity to retain their property by repaying allowed claims and affording protections to the security interests of residential mortgagees. The conclusion most consistent with all of these concepts is that a chapter 13 repayment plan that satisfies a state court judgment of foreclosure does not violate the ban against modification of the security interest of home lenders under Section 1322(b)(2) [5]. As the Second Circuit noted in examining a chapter 13 debtor's rights after the entry of a foreclosure judgment, "We do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be primary beneficiaries of the new code—to the harsher mercies of state law." *In re Taddeo*, 685 F.2d 24, 25 (2d Cir.1982). See also, *In re Jenkins*, 14 B.R. 748 (Bankr.N.D.Ill 1981) and *In re Pearson*, 10 B.R. 189 (Bankr.E.D.N.Y.1981).

**5.** In reaching this conclusion, I am mindful of the expansive language of the *Roach* Court in being unable to "perceive any reason why Congress felt it necessary or desirable to authorize the extinguishment or suspension of state judgments." Two points must be noted. First, there is no extinguishment of the judgment contemplated here. Nor is there a "suspension" of the judgment. Rather, there is a respect for the judgment and a recognition that the entire amount of the judgment must be paid in full through the plan. Secondly, it must be highlighted again that the *Roach* Court was dealing with a plan to cure arrearages and reinstate the mortgage, in total disregard of the basic concept of the extinguishment of the contractual relationship as a result of the merger of the mortgage into the final judgment of foreclosure. This case presents a substantially distinguishable factual setting. Most significantly, debtor does not attempt to reinstate the mortgage.

*III. Applicability of Section 1322(b)(2) After Conversion of a Security Interest into a Judicial Lien*

■ Debtor advances the argument that a secured creditor who obtains a judgment of foreclosure becomes a judicial lien creditor. Because judicial liens, security interests and statutory liens are mutually exclusive categories under the Code, a creditor no longer has a security interest in the debtor's principal residence. Therefore, contends debtor, the claim is no longer entitled to the protections of Section 1322(b)(2) and may be crammed down under the provisions of Section 506(a) to the value of the property. Additionally, the debtor is entitled to invalidate the judicial lien to the extent that the lien impairs debtor's exemption, pursuant to Section 522(f) of the Code. This entire argument must be rejected for several reasons.

The *Seidel* court, *supra*, reviewed the case law on this subject as follows:

A few courts have interpreted the "secured only by a security interest" language as ... permitting modification where the creditor's security interest was converted into a judicial lien prior to the filing of the debtor's petition. *See e.g.*, *In re Garner*, 13 B.R. 799 (Bankr.S. D.N.Y.1981); *In re Jordan*, 5 B.R. 59, 63 (Bankr.D.N.J.1980). However, the majority of courts have explicitly rejected such a reading of subsection b(2), stating that "the mere fact that the amount of a mortgagee's lien has been fixed by decree in foreclosure does not deprive the mortgagee of his status as a secured creditor." *In re Collins*, 19 B.R. 209, 211 (Bankr.S.D.Fla.1982); *see In re Ivory*, 32 B.R. 788, 793 (Bankr.D.Or.1983); *First Financial Savings and Loan Association v. Winkler*, 29 B.R. 771, 775–76 (N.D.Ill.1983) ("the important thing is what in fact secures a creditor's claim, not what legal cloak a creditor may be given to wear").

752 F.2d at 1386.

Of substantial note here are the Title 11 definitions of "security interest" and "judicial lien". The term "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33). "Judicial lien" means a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding". 11 U.S.C. § 101(32). "Security interest" is defined as a "lien created by an agreement." 11 U.S.C. § 101(45). The definitions of judicial lien and security interest focus upon the source of the liens, or the manner in which such liens were "obtained" or "created". Here, under New Jersey law, although Citicorp's mortgage has "merged" into a decree of foreclosure, the only security for the mortgagee's claim remains the real property. R. Cunningham & S. Tischler, 29 *New Jersey Practice: Law of Mortgages* § 38 (1975). The claim continues to be secured only by the originally agreed upon security interest in debtor's principal residence. Therefore, it remains a "security interest" within the meaning of Section 101(45), and continues to be protected by Section 1322(b)(2) from being modified by the chapter 13 plan. That is, the amount of the claim cannot be reduced to the value of the collateral and debtor cannot avoid the lien on Section 522(f) grounds.

To conclude otherwise would be to impose an absurd result upon the opportunity of a mortgagee to proceed to foreclosure judgment under state law and under the agreement of the parties prior to a bankruptcy filing. The argument envisions that when Citicorp obtained a foreclosure judgment, it "wound up with less when it obtained more: It assertedly lost the protection of Code § 1322(b)(2) when it proceeded to judgment in foreclosing [debtor's] mortgage." *First Financial Savings and Loan Association v. Winkler*, 29 B.R. 771, 775 (N.D.Ill.1983). Under such a scenario, a mortgagee in first position, who obtains a foreclosure judgment, could be subordinated to a second mortgagee following a chapter 13 filing if the mortgagee was reduced to the status of a judgment lienholder. This incongruous result cannot be accepted.

*IV. Feasibility of the Chapter 13 Plan*

The plan under consideration here proposes to pay $1,000 per month to Citicorp

for fifty-nine months, with the balance of the foreclosure judgment in the amount of $21,000 [6] to be paid, presumably by refinancing, in the sixtieth month. No provision is made for the payment of interest on the judgment to the secured creditor during the pendency of the plan. Nor is there provision for the trustee's administrative commission, the pre-petition tax claim noted in debtor's petition, the outstanding allowance to debtor's attorney, and carrying charges for the debtor's residence during the pendency of the plan, including local property taxes, sewer and water charges, etc. I must conclude that the plan as proposed must fail, with primary focus on the feasibility requirement of confirmation.

■ Among the requirements for confirmation of a chapter 13 plan is the provision that the debtor will be able to make all payments under the plan and comply with the plan. 11 U.S.C. § 1325(a)(6). A chapter 13 plan must provide for the submission of all or such portion of further earnings or other future income as is necessary for the execution of the plan. 11 U.S.C. § 1322(a)(1). A plan that depends on the receipt of funds from unidentified and uncertain sources during the last month of a sixty-month plan must be scrutinized carefully. In this context, feasibility means "that a reviewing court should confirm a plan only if it appears under all the circumstances that the plan has a reasonable likelihood of success." *In re Anderson,* 28 B.R. 628, 630, C.B.C.2d 1016, 1019 (S.D. Ohio 1982).

■ Many courts have expressed substantial reluctance to confirm a chapter 13 plan "whose success depends entirely upon the occurrence of a contingency scheduled to occur some three to five years from the plan's inception." *In re Hogue,* 78 B.R. 867, 872 (Bankr.S.D.Ohio 1987). See also *In re Crotty,* 11 B.R. 507, 7 B.C.D. 976 (Bankr.N.D.Texas 1981); *In re McClaflin,* 13 B.R. 530 (Bankr.N.D.Ill.1981), and *In re Gavia,* 24 B.R. 573, 7 C.B.C.2d 813 (Bankr.App. 9th Cir.1982). Among the

factors to be considered in each case are the following:

a) the equity in the property at the time of filing;

b) the future earning capacity of the debtor;

c) the future disposable income of the debtor;

d) whether the plan provides for the payment of interest to the secured creditor over the life of the plan;

e) whether the plan provides for payment of recurring charges against the property, including insurance, local property taxes and utility charges;

f) whether the plan provides for substantial payments to the secured creditor which will significantly reduce the debt and enhance the prospects for refinancing at the end of the plan.

The plan presented here cannot succeed. No provision has been made for the payment of the types of expenses normally included in a monthly mortgage charge such as insurance, local property taxes and utility charges. No interest has been afforded to the secured creditor during the life of the plan. The present income of the debtor does not appear to be able to support any additional expenses. There is no likelihood of success for the plan as presently constituted. I must conclude that the plan may not be confirmed as submitted.

The debtor shall have thirty days from the date of the entry of the order to take whatever action is deemed appropriate, including the proposal of an amended plan. Debtor's counsel shall submit an order in conformance with this opinion.

---

**6.** The balance of the foreclosure judgment is actually $22,105.88, without consideration of the trustee's commission.