MADDOX, Justice.
This is the second time these parties have been before this Court. See Sanders v. Flournoy, 640 So.2d 933 (Ala.1994). Their dispute involves property commonly known as “Hudson’s Marina” in Baldwin County, Alabama. The specific question is: Who has the title to a lot within the marina that is referred to in the prior case and this case as “lot 6”?
Although many of the facts surrounding the dispute between the parties are stated in this Court’s earlier opinion, we restate some of them for a better understanding of the issue presented in this appeal.
By a warranty deed dated June 11, 1984, Sallie Hudson, Helen H. Nespor, and Marvin Y. Hudson (“Hudson and Nespor”) conveyed to the appellee Kenneth L. Sanders and to Joe E. Raley and Joseph E. McCarron, Jr., certain real property described in the deed as “Lots 3, 4, and 6, Block 26, Bear Point Heights ... [and] [t]he right, title and interest ... in all that part of Gulf Drive lying West of Avenue E and lying South of Lots 4 and 5, Block 26, in Bear Point Heights....” 640 So.2d at 934. We describe the property as “Hudson’s Marina.”
The deed conveying the marina to Sanders, Raley, and McCarron recited a consideration of $50,500 “cash in hand,” with the remainder, the amount of $217,500, to be paid as evidenced by a promissory note executed by Raley, Sanders, and McCarron. The payment of the note was to be secured by a vendor’s lien in favor of Hudson and Nespor, the lien being reserved in the deed.
McCarron and Raley, in partial satisfaction of the note, transferred Units 404 and 405 of Back Bay Condominiums to Hudson and Nespor. The value of these condominium units was estimated to be $92,500 each, and these transfers reduced the amount owing under the promissory note by $185,000, leaving an unpaid balance acknowledged by the parties as $33,000.
By a warranty deed dated August 31,1984, Raley, Sanders, and McCarron conveyed “Lots 1 through 5, inclusive of Block 26, Bear Point Heights ... [and] Lots 1 through 6, inclusive, of Block 27, Bear Point Heights” to Frank J. Caron. Lot 6 of block 26 was not included in this conveyance. The terms of the deed indicated that the conveyance was subject to the Hudson and Nespor vendor’s lien and that Caron was to assume the balance of the promissory note executed by Sanders, Raley, and McCarron to Hudson and Nespor, which balance the deed indicated was $33,000.[1]
On April 26, 1985, Caron executed a mortgage of property that included lots 1 through 5 of block 26 to the Baldwin County Savings and Loan Association. This mortgage did not include lot 6. Hudson and Nespor then assigned the 1984 note and vendor’s lien to Baldwin County Savings and Loan Association. Baldwin County Savings and Loan Association, as consideration for this assignment, agreed to pay to Hudson and Nespor $31,095.41, which was the sum that Hudson and Nespor represented to be the total outstanding balance of the note, and to pay an additional $3,599.51. The apparent purpose for assigning the note and vendor’s Ken from Hudson and Nespor was for Baldwin County Savings and Loan Association to have first priority on lots three, four, and five. Baldwin County Savings and Loan Association later foreclosed the mortgage executed by Caron and obtained title to lots 1 through 5 of block 26. The foreclosure deed did not evidence that it extinguished the note and vendor’s Ken that Baldwin County Savings and Loan Association also held by assignment. Subsequently, Resolution Trust Corporation (“RTC”) acquired the assets of Baldwin County Savings and Loan Association.
In the spring of 1991, Flournoy offered to RTC to buy lots 1 through 5 and lot 6 of *868 block 26. After some negotiations, RTC executed on September 18, 1991, a partial release from the vendor’s lien. This partial release stated that it released lots 3, 4, and 5 from the lien for the sum of $10. RTC sold lots 1 through 5 of block 26 to Flournoy for $103,500 on September 25, 1991. On September 25,1991, RTC also assigned the vendor’s lien to Flournoy for $33,500.
On March 10,1992, Sanders filed an action under the provisions of Ala.Code 1975, § 6-6-220, and with regard to lot 6 specifically alleged that he “continues to own an interest in [lot 6] but is uncertain and insecure concerning his rights and obligations under the vendor’s lien referred to [in his complaint] to such an extent that a justiciable controversy exists between [Sanders] and [Flournoy].” Sanders asked the court to determine the status of the vendor’s Ken and his rights concerning the improvements that had been constructed on lot 6 by Flournoy.
On July 21, 1992, Flournoy moved to have McCarron and Raley joined as plaintiffs in his action. The court granted the motion. On September 28,1992, McCarron and Raley filed a motion asking that they be dismissed as parties because, they said, “McCarron and Raley intended to convey all of the Hudson Marina property [including lot 6] to Mr. Car-on,” and “[u]ntil recently, McCarron and Ra-ley thought they had in fact conveyed all of the Hudson Marine Property to Mr. Caron [and that] McCarron and Raley beheve that the person who prepared the above described warranty deed simply inadvertently omitted [lot 6].” They further alleged: “McCarron and Raley do not care if the Court awards [lot 6] to Kenneth L. Sanders, or if the Court awards [lot 6] to Donald B. Flournoy.” On September 30, 1992, Flournoy filed a motion to add Lonnie Mixon and C. Michael Smith, trustees in bankruptcy for McCarron and Raley respectively, as involuntary plaintiffs. They were added, and McCarron and Raley were dismissed.
On December 11, 1992, Flournoy filed a counterclaim, asking the court to reform the deed to include lot 6. The court entered a final judgment in which it made the following findings of fact and conclusion of law:
“2. From the evidence, it appears to the Court that on August 31, 1984, Sanders, McCarron and Raley conveyed lots 3, 4 and 5 of Block 26, which lands adjoin the above described property, to Frank J. Car-on by instrument recorded at Real Property Book 189, page 515. Said deed did not, however, convey the vacated portion of Gulf Drive described in Paragraph 1. hereof [lot 6]. Following this conveyance, Sanders, Raley and McCarron exercised no acts of ownership or possession over or with respect to the property described in paragraph 1. above. In addition, neither Sanders nor any of the other tenants in common paid any taxes on said property or otherwise made any payments on the Promissory Note which is secured by the subject vendor’s Ken at any time foUowing their conveyance of the adjoining lands. From aU evidence presented, the Court finds that Plaintiff Sanders, together with Co-Defendants Joseph E. McCarron, Jr. and Joe E. Raley (who are the remaining record title owners of the above described property) intended to convey the property described above [lot 6] at the time they conveyed adjoining property to Frank J. Caron on August 31, 1984. The Court further finds from the testimony of Co-Defendants McCarron and Raley, together with a Motion to Dismiss filed in this cause on behalf of said Co-Defendants, that said parties claim no right, title or interest in and to the above described property, nor is any such right, title or interest claimed in the above described property by the respective Trustees in Bankruptcy for Co-Defendants McCarron and Raley. For the reasons stated above, the Court finds that McCarron, Raley and their respective Trustees in Bankruptcy do not now claim any interest in the above described property and that they are estopped from claiming any further rights with respect to the land and improvements made the basis of this action.”
The circuit court refused to reduce the amount Sanders owed under the promissory note secured by the vendor’s Ken, and Sanders appealed. Sanders v. Flournoy, supra. In that prior appeal, this Court said that the first issue was whether Sanders was entitled *869 to a reduction of the amount owed on the vendor’s hen, because of the release of part of the security for the note: lots 3, 4 and 5. This Court stated the second issue as whether Flournoy was entitled to a lien on lot 6 in the amount of the value of the improvements he had made on the lot.[2]
On the previous appeal this Court held:
“That portion of the judgment refusing to allow an abatement or apportionment of the amount of the note secured by the vendor’s lien is affirmed. That portion of the judgment imposing an equitable lien on lot 6 for the value of improvements made by Flournoy is reversed. The cause is remanded for further proceedings consistent with this opinion.”
640 So.2d at 940.
After remand, McCarron and Raley’s trustees in bankruptcy executed to Flournoy a statutory warranty deed to lot 6. (C.R. 9-11.) Flournoy then filed this action, in which he alleged that he owned an undivided two-thirds interest in lot 6 and that Sanders owned the remaining one-third interest as indicated by a vendor’s lien retained in the deed dated June 11, 1984, mentioned above. He sought a sale of the property and a division of the proceeds among the joint tenants.
Sanders, answering the complaint, moved the court “to consolidate the above-styled cause with that certain action now pending in this Court styled Kenneth L. Sanders, Plaintiff, v. Donald B. Flournoy, Defendant, Case no. CV-92-152,” (C.R. 5) and asking that the trial court find that Flournoy “own[ed] no right, title or interest in and to the real property or improvements which are the subject of the above styled cause [lot 6].” (C.R. 7.) As grounds for this relief, Sanders alleged, in part:
“That in Case No. CV-92-152, the Honorable James H. Reid did enter a final decree dated March 26,1993, including the following finding, to wit:
“ ‘From all evidence presented, the Court finds that Plaintiff Sanders, together with Co-Defendants Joseph E. McCarron, Jr. and Joe E. Raley (who are the remaining record title owners of the above described property) intended to convey the property described above (the vacated portion of Gulf Drive) at the time they conveyed adjoining property to Frank J. Caron on August 31, 1984. The Court further finds from the testimony of Co-Defendants McCarron and Raley, together with a Motion to Dismiss filed in this cause on behalf of said Co-Defendants, that said parties claim no right, title or interest in and to the above described property, nor is any such right, title or interest claimed in the above described property by the respective Trustees in Bankruptcy for Co-Defendants McCarron and Raley. For the reasons stated above, the Court finds that McCarron, Raley and their respective Trustees in Bankruptcy do not now claim any interest in the above described property and that they are estopped from claiming any further rights with respect to the land and improvements made the basis of this action.’
“That to the extent the above mentioned provision of said Final Decree requires construction or enforcement, that issue should be properly addressed by the Honorable James H. Reid, Jr., who entered said Final Decree and whose intention is relevant in determining the effect of said provision of said Final Decree on the title thereafter acquired by Donald B. Flour-noy, the Plaintiff in the above-styled cause, and which is asserted as the basis of his title in said property and on which he relies in filing the present complaint for sale for division.
“That there is no genuine issue as to any material fact concerning the ownership interest of Donald B. Flournoy in said property in that the prior Decree entered by Judge James H. Reid determined that neither Joseph E. McCarron, Jr., Joe E. Ra-ley, nor their Trustees in Bankruptcy had any right, title or interest in the subject *870 property which could be conveyed to Donald B. Flournoy and which is expressly the source of the title claimed by him in the present complaint for sale for division.”
(C.R. 6-7.)
The trial judge, in an “Amended Final Judgment,” held, in part, as follows:
“It is the finding of the Court that said deed is void and of no force and effect to convey any right, title or interest in or to the real property described therein and which is the subject hereof in that it was determined in the Final Decree referred to above, dated March 26, 1993, that neither the said Joseph E. McCarron, Jr. nor Joe E. Raley nor their respective trustees in bankruptcy (Lonnie Mixon and C. Michael Smith) owned any said right, title or interest in or to said property; and that there was no appeal concerning that issue and that the said Donald B. Flournoy, as a successor in interest to the said Joseph E. McCarron, Jr. and Joe E. Raley, and their trustees in bankruptcy, who were parties to the prior proceeding, are barred by the doctrine of res judicata from relitigating said issue.
“For the foregoing reasons, it is ORDERED, ADJUDGED AND DECREED that the above-referenced Trustee’s Deed is void and of no force and effect and that Kenneth L. Sanders is the owner of the above-described real property and all improvements situated thereon.”
(C.R. 16.)
One of the main questions presented on this appeal is whether the trial court correctly declared that the statutory warranty deed from the bankruptcy trustees was void and that title to lot 6 passed to Sanders under the terms of the judgment entered in Case No. CV-92-152.
Sanders contends that he obtained title to lot 6 “by estoppel,” or by application of the doctrine of res judicata, in that Flournoy filed a counterclaim in the original proceeding, asking that the trial judge reform each of the conveyances, but the trial judge refused to do so, specifically stating “that McCarron, Raley and their respective Trustees in Bankruptcy do not now claim any interest in the above described property and that they are estopped from claiming any further rights with respect to the land and improvements made the basis of this action.” (C.R. 19-20.)
During oral arguments of this case, ordered by this Court, Sanders argued that Flournoy did not appeal from that decision in Case No. CV-92-152, and pointed out that this Court, in a footnote to its opinion, stated that “Sanders owns lot 6, and Flournoy owns lots 3 through 5.” 640 So.2d at 934.
Sanders argues that Flournoy is estopped from claiming any further rights with respect to lot 6. Flournoy counters that argument by stating that title to property must be someplace at all times; that the trial court, in the prior proceeding, had specifically found that Sanders, McCarron, and Raley had “exercised no acts of ownership or possession over or with respect to [lot 6]”; and that “neither Sanders nor any of the other tenants in common paid any taxes on [lot 6]” following conveyance of adjoining lots. He also says that the trial judge specifically found that Sanders, McCarron, and Raley intended to convey lot 6. We find Flournoy’s argument to be persuasive.
This case had been remanded to the trial court, and was still pending in that court, when Flournoy filed this action, asking that the subject property be sold for division. Sanders then filed a motion for summary judgment and asked that the petition for sale for division be consolidated with the original action from which appeals had been taken. The trial judge had previously found in favor of Flournoy on his claim that he held an equitable lien on lot 6 because of the improvements he had made. This Court only reversed that judgment and remanded the cause; it did not render the cause and direct the trial judge to vest title to lot 6 and the improvements located thereon in Sanders.
The following facts are uncontroverted: 1) Sanders, McCarron, and Raley “intended to convey” lot 6 as a part of Hudson’s Marina; 2) Sanders, McCarron, and Raley “exercised no acts of ownership or possession over or with respect to [lot 6]”; 3) “neither Sanders nor any of the other tenants in common paid any taxes on [lot 6]”; 4) in the original *871 action, the trial court “expressly determined that there [was] no just reason for delay in the entry of judgment under the terms of the decree, and [did] expressly direct the entry of judgment in favor of [Flour-noy] pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure”; 5) Sanders was successful on the prior appeal, and the cause was remanded; 6) after remand, McCarron and Raley’s trustees in bankruptcy executed a statutory warranty deed to Flournoy; and 7) the trial court determined, in this action, that Flournoy was estopped to claim any interest in lot 6. The quoted portions of this paragraph are taken from the trial court’s judgment in the original action filed by Sanders for a declaratory judgment.
The trial court’s determination that title to lot 6 passed to Sanders based on the above-listed facts cannot stand. The trial judge, in his original judgment, found that Sanders, McCarron, and Raley had “intended to convey [lot 6] at the time they conveyed adjoining property to Frank J. Caron on August 31, 1984”; that Sanders, McCarron, and Ra-ley “exercised no acts of ownership or possession over or with respect to [lot 6]”; and that “neither Sanders nor any of the other tenants in common paid any taxes on [lot 6].” Based on the above-mentioned facts, and on all the other facts that appear of record in this case and in the prior appeal, we hold that the trial court erred in determining that Flournoy was estopped to claim a two-thirds interest in lot 6.
Having decided this issue, we need not decide whether the trial court was without jurisdiction to decide the issue of ownership in lot 6, because that was an issue within the exclusive jurisdiction of the United States bankruptcy court, based on the fact that the deeds were executed by the two trustees in bankruptcy.[3]
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
ALMON, J., dissents.

. There was testimony in the prior trial that the total purchase price for the lots in blocks 26 and 27 was to be $1,200,000.

. Flournoy had erected a seawall, mooring pilings, catwalks, and a pier on lot 6. He also had dredged the water basin, cleared off a good deal of debris, and made various other improvements to lot 6.

. On or about May 3, 1994, Flournoy obtained a trustee’s deed to the Gulf Drive parcel from Lonnie Mixon, as trustee of the estate of Joseph E. McCarron, Jr., and from C. Michael Smith, as trustee of the estate of Joe E. Raley, Jr., and it was this deed that the trial court declared void. Flournoy argued that the trial court improperly entered a summary judgment for Sanders because the bankruptcy court had control over all property of the bankrupt debtors from whom he acquired his interest in lot 6, because original and exclusive jurisdiction to hear Title 11 cases is vested in the federal district court. See 28 U.S.C. § 1334(d), which states that the "District Court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate.” See Matter of Brunson, 87 B.R. 304 (Bankr.D.N.J.1988). Cf. 11 U.S.C. § 362, part of the Bankruptcy Code, which has been held to operate to deprive a state court of jurisdiction over the debtor in state court proceedings initiated against the bankrupt party. Graham v. Pazos De La Torre, 821 S.W.2d 162, 164 (Tex.App.1991). See, also, United States v. ILCO, Inc. 48 B.R. 1016, 1018 (Bankr.N.D.Ala.1985).
At oral argument, both sides requested this Court to finally resolve the title issue, and we elect to do so.