**In re James C. HARRIS, Debtor.**

**Bankruptcy No. 95–11484–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

Aug. 16, 1996.

---

Timothy P. Smith, Manchester, NH, for debtor.

Peter V. Doyle, Shaines & McEachern, Portsmouth, NH, for Citicorp Mortgage.

Lawrence P. Sumski, Trustee, Amherst, NH.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it the confirmation of the Chapter 13 plan of James Harris ("Debtor"). The Court took the matter under advisement at the close of the continued confirmation hearing held on July 12, 1996, in order to address three issues: (1) whether the plan is feasible given its balloon payment provision; (2) whether the lien held by Citicorp Mortgage, Inc. ("Citicorp") survives with respect to a nonfiling co-debtor; and (3) whether the plan provides Citicorp the full value of its collateral since the plan lacks a provision relating to the assignment of rents.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### Facts

The Debtor filed his Chapter 13 petition on June 20, 1995. In Schedule A he listed his two-family home as jointly owned and having a market value of $60,000. Citicorp Mortgage filed a proof of claim in the amount of $90,614.22. In his plan, the Debtor proposes to bifurcate Citicorp's mortgage. Accordingly, the Debtor will treat $60,000 as an allowed secured claim, the value the Court attributed to the property at a confirmation hearing held on June 14, 1996, and the balance as an unsecured claim. The Debtor will pay $644.77 per month to Citibank which represents the required payment to amortize the debt over a fifteen year period at an interest rate of ten percent. At the end of

the sixty month plan period the Debtor proposes to make a balloon payment to Citibank in the approximate amount of $48,792.

### Discussion

### I. Balloon Payment

The first issue before the Court is whether the balloon payment proposed by the Debtor complies with 11 U.S.C. § 1325(a)(6). Section 1325(a)(6) provides that the Debtor must be "able to make all payments under the plan and to comply with the plan." Thus, the Court must determine the feasibility of the Debtor's plan.

According to Judge Lundin, "any Chapter 13 plan that proposes a balloon payment at some time in the future is suspect of confirmation unless there is proof of some special circumstance likely to produce a bucket of cash at just the right time to make the payment." 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 5.56 (2d ed. 1994). Many courts have adopted this view.

■ In *In re Brunson*, 87 B.R. 304, 312 (Bankr.D.N.J.1988), the court stated that "[a] plan that depends on the receipt of funds from unidentified and uncertain sources during the last month of a sixty-month plan must be scrutinized carefully. In this context, feasibility means 'that a reviewing court should confirm a plan only if it appears under all the circumstances that the plan has a reasonable likelihood of success.'" The court enumerated several factors to be considered in balloon payment cases:

1) the equity in the property at the time of filing;

2) the future earning capacity of the debtor;

3) the future disposable income of the debtor;

4) whether the plan provides for the payment of interest to the secured creditor over the life of the plan;

5) whether the plan provides for payment of recurring charges against the property, including insurance, local property taxes and utility charges; and

6) whether the plan provides for substantial payments to the secured creditor

which will significantly reduce the debt and enhance the prospects for refinancing at the end of the plan.

*Id.* After examining these factors, the *Brunson* court found that the debtor's plan could not be confirmed.

The court in *In re Endicott*, 157 B.R. 255, 263 (W.D.Va.1993), expressed reluctance in confirming a plan that requires the payment of a large sum at the end with no source of income for the payment in sight. The court explained that an analysis of the six *Brunson* factors is one method for determining whether a plan with a balloon payment is feasible.

In *In re Groff*, 131 B.R. 703 (Bankr. E.D.Wis.1991), the court was faced with a plan containing an $18,000 balloon payment and the issue of whether such a plan was feasible. In confirming the debtors' plan, the court placed some weight on the fact that a bank had expressed some willingness to finance the debtors' balloon payment. *Id.* at 709.

In *In re Gregory*, 143 B.R. 424, 426 (Bankr.E.D.Tex.1992), the court stated "the inclusion of a balloon payment scheme in a plan is not dispositive of a plan's feasibility. Instead, a bankruptcy court must consider the propriety of the balloon payment under the totality of the circumstances." In that case, the balloon payment to the IRS was to be funded from the sale of the debtors' unencumbered home, and the court found that such a payment was not so speculative under the circumstances to render the plan unconfirmable. *Id.*

■ The Court finds, after reviewing the facts of this case, that the Debtor's plan is too speculative and, therefore, not feasible. First, the Debtor provided no evidence that he has a relationship with a bank that would be willing to finance the balloon payment. While Debtor's counsel suggested that by the end of the plan a bank or refinancer would have four years of payment history by which to judge the Debtor's ability to finance the balloon payment, this does not make the Debtor's plan less speculative today. Second, the Debtor's property lacked equity at the time of the bankruptcy filing and after bifurcation. At the completion of the Debt-

or's plan, there will be less than twenty percent equity in the Debtor's home, assuming the value of the property remains constant. Third, the Debtor offered no evidence showing a change in future income and the only evidence offered to show an increase in future disposable income was the reduction in his mortgage payment, provided he can obtain a mortgage. Under the plan, the Debtor would pay $644.77 per month while the balloon payment would only require payments of $537 per month. Last, the Court notes that the Debtor's plan is inconsistent with paragraph 14 of his divorce stipulation which requires the Debtor to refinance the house within three years of the divorce or place it on the market to be sold.

## II. Mortgage Lien

The Debtor's former wife is a co-debtor on Citicorp's note and mortgage and has not filed bankruptcy.[1] The Debtor's divorce stipulation provides that "the [Debtor] is awarded the parties' residence located at 602 Hall Street, Manchester, New Hampshire."[2] However, no deed transferring the property has been prepared or filed and the Debtor has listed the property as jointly owned on his bankruptcy schedules. At issue before the Court is whether Citicorp's mortgage lien will survive the Debtor's bankruptcy in spite of the plan's cram down provision given the nonfiling co-debtor.

The Debtor cites two cases in support of his position that the mortgage should be discharged: *Johnson v. Home State Bank,*

501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) and *In re Lumpkin,* 144 B.R. 240 (Bankr.D.Conn.1992). In *Johnson,* the issue before the Supreme Court was whether the mortgage lien that secured an obligation for which the debtor's personal liability had been discharged in Chapter 7 liquidation was a claim subject to inclusion in a Chapter 13 plan. The Supreme Court found that such a mortgage interest was a claim within the terms of 11 U.S.C. § 101(5). "Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Johnson v. Home State Bank,* 501 U.S. at 84, 111 S.Ct. at 2154. In *In re Lumpkin,* the bankruptcy court cited *Johnson* to support its holding that a Chapter 13 plan may deal with a claim where there is no personal liability, no matter what circumstances underlay the lack of personal liability. In that case, the Chapter 13 debtor was not the maker of the mortgage note and did not assume the mortgage upon the transfer of the property from her mother, the maker of the note.[3]

While both of these cases highlight the distinction between in personam claims and in rem claims and hold that a Chapter 13 plan may include in rem claims, neither case addresses the issue before the Court. This case involves a debtor who seeks to discharge both in personam and in rem claims through his Chapter 13 plan. Clearly, through his plan, the Debtor's personal liability on the

---

1. At the continued confirmation hearing, the Court noted that Citicorp could get relief from the co-debtor stay imposed by 11 U.S.C. § 1301 in order to collect immediately from the Debtor's former wife. Citicorp has not yet sought such relief.

2. The decree further provides:

   That the residence shall be refinanced within 3 years of the effective day of the parties' divorce or the house shall be placed on the market for sale. Any deficiency shall be paid by the [Debtor] and the [Debtor] agrees to hold the Plaintiff harmless for same and indemnify the Plaintiff as an alimony obligation for any indebtedness she incurs as a result of the parties' ownership of said residence. That in the event that [Debtor] refinances said residence the Plaintiff shall execute a quit claim deed trans-

ferring all right, title and interest in said residence to the [Debtor].
   (Ct.Doc. 20 at ¶ 14.)

3. *Lumpkin* has been criticized by *Ulster Sav. Bank v. Kizelnik (In re Kizelnik),* 190 B.R. 171, 179 (Bankr.S.D.N.Y.1995), which noted that the results in *Lumpkin* "offend traditional commercial and contract law precepts, based upon a misinterpretation and misapplication of the Supreme Court's holding in *Johnson.*" The Court notes that in *Green v. Arlington Trust Co. (In re Green),* 42 B.R. 308 (Bankr.D.N.H.1984), a pre-*Johnson* case with different facts than *Johnson,* this Court granted relief from the automatic stay to a trust company to permit foreclosure of its mortgage because the debtors, as purchasers of the property, had no debtor-creditor relationship with the trust company and were not personally liable on the note.

mortgage note in excess of $60,000 would be discharged and the in rem claim of Citicorp against the Debtor's interest in the premises would be limited to $60,000. *See Gibbons v. Opechee Distribs., Inc. (In re Gibbons),* 164 B.R. 207, 208 (Bankr.D.N.H.1993).

 Citicorp argues, however, that the Debtor's nonfiling co-debtor can not avoid the bargained for obligations imposed by her mortgage, the mortgage covenants, and the assignment of leases and rents, without becoming a debtor in bankruptcy, with or without conveyance of the underlying real estate, simply by having her co-debtor file bankruptcy. The Court agrees with Citicorp.

This Court cannot find that either the nonfiling co-debtor's personal liability to Citicorp or the in rem claim of Citicorp against the interest of the nonfiling co-debtor is in any way affected by the Chapter 13 filing of the Debtor, other than by the effects of the co-debtor stay provisions of the Code. Because both *Johnson* and *Lumpkin* involve a debtor's interest, not a nonfiling co-debtor's interest, they do not mandate a different result in this case.

### III. Assignment of Rents

 The last issue before the Court is whether the plan provides Citicorp the full value of its collateral since the plan lacks a provision relating to the assignment of rents. At the confirmation hearing held on June 14, 1996, Citicorp had in its possession an appraisal of the property at a value of $66,000. The Debtor's attorney objected to its introduction into evidence as the appraiser was not present to testify. The Debtor's attorney made an offer of proof that the Debtor, who was present in the courtroom, would testify that the property was worth $60,000. As there was no evidence to the contrary before it, the Court found the value of the premises to be $60,000.

Without more valuation evidence before it, the Court is unable to determine whether the plan provides Citicorp the full value of its collateral. Because the plan is not feasible, this issue is moot. The Court notes, however, that if the appraisal of the property were based on the income approach, the rent would be included in the value. Even under a sales approach, the rent may also be subsumed in the value of the Debtor's property.

### Conclusion

Because the Debtor's plan is not feasible, confirmation is denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.