**In re Timothy Harold SHELLY, Carol Lynn Shelly, Debtor(s).**

**No. 11–51275.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Sept. 28, 2011.

Christine Corzin, Akron, OH, for Debtors.

Edward J. Murphy, Counsel to the IRS
Keith Rucinski, Chapter 13 Trustee.

## MEMORANDUM OPINION RE: MOTION TO DISMISS

MARILYN SHEA–STONUM,
Bankruptcy Judge.

This matter is before the Court on a motion to dismiss this chapter 13 bankruptcy case filed by the United States of America (Internal Revenue Service) (the "IRS") [docket # 34] (the "Motion to Dismiss"); debtors' response to the Motion to Dismiss [docket # 40]; the reply of the IRS to debtors' response [docket # 47] and debtors' response to the IRS's reply [docket # 51]. A hearing on the matter was held on July 14, 2011 at which counsel for the IRS and counsel for debtors appeared. Neither party presented evidence in support of their position and counsel for both parties indicated that the matter could be decided on the pleadings and their arguments at the hearing. This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## BACKGROUND FACTS

On January 21, 2010, the United States District Court for the Northern District of Ohio (the "District Court") entered a final judgment in favor of the IRS and against Timothy Harold Shelly for his federal income tax liabilities for the years 1991–93 and 2003 in the amount of $403,422.14, plus interest and statutory accruals from August 31, 2009, and against Carol Lynn Shelly for her federal income tax liability for the year 1991 in the amount of $117,388.21, plus interest and statutory accruals from August 31, 2009 (the "Judgment"). On February 18, 2010, the Shellys moved for relief from the Judgment under Fed.R.Civ.P. 60. That motion was denied by the District Court in an order entered April 12, 2010.

On July 2, 2010, the Shellys moved to stay the Judgment pending the outcome of their appeal to the Sixth Circuit Court of Appeals (the "Sixth Circuit"). On August 31, 2010 the District Court entered an order denying the Shellys' motion to stay execution of the Judgment pending appeal. The District Court found that the Shellys had failed to demonstrate a likelihood of the success of their appeal on the merits of their case. The District Court also found that the Shellys failed to demonstrate that, without a stay, they would be irreparably harmed:

> In conclusory fashion, the Shellys assert that they will be irreparably harmed without a stay. In support, they assert that their real property is unique, that it has been their home for a lengthy period of time, and that they will be unable to redeem the property if it is foreclosed upon by the Government.

> There is no dispute that real property is unique and that the Shellys will suffer harm from the sale of the property on which they reside. However, any harm to the Shellys is mitigated by several

factors. First, this matter was filed on March 21, 2008. Since that time, counsel for the Government has repeatedly worked with the Shellys in an effort to resolve the matter and has made no attempts to move the matter to an abrupt end. In that regard, the Court's judgment entry of January 21, 2010 permitted the Government to submit proposed foreclosure proceedings. Now seven months later, the Government has not filed these *proposed* procedures, let alone made any attempt to execute on judgment. While the Government has indicated that it will file such proposed procedures upon the denial of this motion, even such a filing will do little more than set in [ ] motion a lengthy foreclosure process.

In addition to the harm to the Shellys, there is undoubtedly a harm to the Government were the Court to impose a stay in this matter. The Shellys have not attempted to post a supersedeas bond in the matter and in fact argue that no bond is necessary. As a result, the Government's judgment would be secured solely by judgment liens on the property at issue. In the current real estate market, there is little doubt that the property at issue has declined in value during the pendency of these proceedings, and there is a very real possibility that its value will continue to decline during the appeal.

Finally, the public's interest in efficient tax collection will continue to be thwarted if judgment in this matter is stayed. The Shelly's deficient taxes stem from as far back as 1991. A stay would only further lengthen the time period of that deficiency. The public interest lies heavily in favor of collecting taxes that were due and owing well more than fifteen years ago.

The Shellys then moved the Sixth Circuit for a stay on execution of the Judgment. That motion was denied by the Sixth Circuit through an order entered on November 1, 2010.

"Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right." ... The defendants have not availed themselves of that right. If a stay is not granted, they alternatively ask that the bond requirement be waived on the theory that the government's judgment liens on their property are the "functional equivalent of a supersedeas bond." The district court did not agree. It declined to waive the bond requirement because the liens do not protect the government from the possibility that the value of the property might decline. The decision to grant or deny a supersedeas bond is reviewed for abuse of discretion.... The defendants have not presented sufficient evidence to warrant such a finding.

In addition to determining income tax liabilities, the Judgment also provides that the IRS is authorized under 26 U.S.C. § 7403 to enforce its tax liens against all potentially competing interests in the real property commonly known as 118 North Avon Avenue, Wadsworth, Ohio ("the North Avon Property") and to sell that property, with the proceeds of sale to be applied against the Judgment. The District Court ordered the liens be enforced against the North Avon Property notwithstanding the fact that the property is titled to the UBEE Rental Land Trust, a/k/a the UBEE Rental Land Trust Trust ("UBEE Trust"). The IRS prevailed in its argument that the UBEE Trust is the nominee and alter ego of the Shellys. Abstracts of Judgment, reflecting the Shellys' tax liabilities to the United States, were recorded with the Medina County Recorder on October 14, 2010, and February 14, 2011. The District Court entered an Order of Sale on October 28, 2010, specifying the sale procedure for the North Avon Property. The Order of Sale provides that the sale is without any right of redemption. The IRS was preparing to sell the North Avon Property at the time that the Shellys commenced their bankruptcy case.[1]

Timothy and Carol Shelly filed their chapter 13 bankruptcy petition on April 5, 2011. On their Schedule F—Creditors Holding Unsecured Nonpriority Claims debtors lists claims totaling $191,917.76. On their Schedule D—Creditors Holding Secured Claims they list the IRS as holding a $443,851.09 claim. On May 6, 2011 debtors filed a motion seeking to determine the secured status of the IRS's claim pursuant to 11 U.S.C. § 506. Pursuant to that motion, debtors contend that the IRS's claim should be secured in the amount of $206,958.08 (the "Proposed Secured Claim"). Included as an exhibit to debtors' motion is a detailed list of all the property subject to the IRS's lien and debtors' proposed value of each such item. On June 7, 2011 the IRS filed an objection to debtors' motion regarding the Proposed Secured Claim.

On May 3, 2011 debtors filed a chapter 13 plan which provides that debtors would make a $600.00 monthly payment to the chapter 13 trustee and the trustee would make payments under the plan to creditors. Paragraph 6 of debtors' plan lists a $443,851.09 secured claim held by the IRS and notes that "[s]ecured/unsecured

---

1. In November 2010 the Shellys sold their residence and transferred the proceeds ($115,000.00) to the United States in exchange for a discharge of the government's liens against that property. That amount has been credited against the amount due under the Judgment.

amounts to be determined by separate motion." The plan further provides as follows:

> Notwithstanding the above, this Plan is atypical due to the current circumstances of the debtors: Real and personal property of Husband is subject to tax liens, the judgment for which is currently under appeal. Subject to the outcome of this appeal and further actions to determine tax liability, the debtors shall liquidate Husband's property to satisfy the secured portion of any resulting tax liability. The security interest of the Internal Revenue Service shall be determined by separate motion to determine the secured and unsecured portion of the claim of the IRS. The amount of the claim which is judicially determined to be unsecured shall be treated as a general, non-priority unsecured claim. Further, the debtors are plaintiffs in a legal malpractice claim (Summit County Court of Common Pleas Case No. 2010–08–5714) arising out of the representation of the debtors by Attorney Carr in the United States District Court Case No. 1:08–CV–000718. The debtors shall turn over any net proceeds of this action to the Chapter 13 Trustee for distribution. In the event the appeal of judgment is unsuccessful and the malpractice claim is unsuccessful or, if successful, falls short of payment required to be made to the IRS, the debtors shall liquidate property, the net proceeds from which shall be turned over to the Chapter 13 Trustee for distribution.

Debtors' proposed plan was subsequently amended to provide that "[h]olders of allowed secured claims provided for by the plan shall retain its [sic] lien as set forth in § 1325(a)(5)(B)."

On June 7, 2011 the IRS filed the Motion to Dismiss and on June 23, 2011 it filed a motion seeking relief from the automatic stay to proceed with foreclosure on the North Avon Property. Debtors filed objections to both of those motions and hearings on those matters were held on July 14, 2011. Pursuant to the hearing the Court took both matters under advisement. On July 25, 2011 the Court entered an order overruling debtors' objection and granting the IRS's motion for relief from stay.[2]

## DISCUSSION

Section 1325 of the Bankruptcy Code sets forth certain requirements that must be met before a chapter 13 plan can be confirmed. *Shaw v. Aurgroup Fin. Credit Union,* 552 F.3d 447, 455 (6th Cir.2009) (noting that the provisions in § 1325(a) are "mandatory requirements for confirmation"). With respect to each secured claim provided for by the plan, those requirements include the following: (1) that the holder of the secured claim has accepted the plan; (2) that the debtor surrenders the property securing the claim to the secured creditor; or (3) that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim...." 11 U.S.C. § 1325(a)(5). Because the IRS has not accepted the plan and because debtors do not propose to surrender the property securing the IRS's claim, debtors' plan must meet the third requirement before it can be confirmed. *See* 11 U.S.C. § 1325(a)(5)(B)(ii). Moreover, debtors must demonstrate the feasibility of the provisions of and proposed payments under their proposed plan. 11 U.S.C. § 1325(a)(6).

---

**2.** A stipulated order granting relief from the automatic stay to allow debtors and the IRS to proceed with the appeal before the Sixth Circuit was entered on August 1, 2011.

Through the Motion to Dismiss the IRS contends that this chapter 13 case should be dismissed because debtors are unable to propose a feasible chapter 13 plan. Specifically, the IRS contends that, even if it is found to hold only the Proposed Secured Claim, the proposed plan does not provide for full payment of that claim as specifically required by § 1325(a)(5)(B)(ii). Although debtors acknowledge that their proposed payments through the plan are not sufficient to fully pay even the Proposed Secured Claim, they contend that the plan is still feasible and could be confirmed:

> [A]lthough the total Plan payments by the Debtors amount to $36,000.000 [over the course of five years], the Plan also provides for all net proceeds resulting from the malpractice claim to be paid into the Plan for distribution.... The Debtors' malpractice claim pending in Summit County Court of Common Pleas stems from the attorney's mishandling of the United States District Court case in which the United States obtained [the Judgment] due to a failure of the attorney to submit any evidence whatsoever in response to a summary judgment motion. Should this claim be successful, the resulting damages are projected to be in an amount, at the least, equal to the judgment obtained by the United States. In that event, the proceeds will satisfy the claim of the United States. If the malpractice suit is unsuccessful or the proceeds are insufficient to satisfy the United States' claim, the United States' judgment, if upheld on appeal, can be satisfied through liquidation of property. Furthermore, adequate protection is provided in that the plan provides for equal monthly payments, the United States retains its security interest in the debtors' property and the property remains insured, as verified to the Chapter 13 trustee.

Based upon the uncontested facts of this case, Debtors' contention is without merit.

As noted, debtors' plan proposes to make 60 monthly payments to the trustee of $600 each. In addition to providing for payment on the Proposed Secured Claim, that $600 monthly payment is also intended to pay a claim secured by an automobile and a 1% dividend to creditors holding allowed unsecured claims. Those cash payments are simply not enough to meet the requirements of § 1325(a)(5)(B)(ii) of the Bankruptcy Code or to adequately protect the IRS during the 60 month period of the plan.

Debtors' proposal to additionally compensate the IRS through the receipt of funds that is contingent upon a successful prosecution of the appeal of the Judgment and their malpractice suit also renders the plan infeasible. As to the pending appeal, both the District Court and the Sixth Circuit found that the debtors could not demonstrate a likelihood of the success on the merits of their case. As to their pending malpractice action, debtors failed to provide this Court with *any* information other than the fact that a lawsuit has been filed. Accordingly, the Court simply cannot find that debtors' proposal to pay the IRS from a potential receipt of funds from such litigation is a feasible mode of payment. *Cf. In re Gavia*, 24 B.R. 573 (9th Cir. BAP 1982) (plans which called for a single payment to creditors from proceeds of potential sale of residence were not feasible where no evidence of likelihood of sale was presented); *In re Harris*, 199 B.R. 434 (Bankr.D.N.H.1996) (plan that provided for large balloon payment at end of 60 months did not satisfy feasibility requirement where debtor provided no evidence that bank would be willing to lend funds for such payment); *In re Hogue*, 78 B.R. 867 (Bankr.S.D.Ohio 1987) (plans dependent upon sale or refinancing of debtors'

residences at or near end of plan term were not feasible absent evidence that such sales or refinancings were reasonably likely to occur).

## CONCLUSION

Based upon the foregoing the Court finds that debtors' plan fails to meet the requirements of § 1325(a)(5)(B)(ii) and is not feasible. Accordingly, the Motion to Dismiss is well taken. An order dismissing debtors' chapter 13 case will be entered separately in this proceeding.